JENNIFER POSEY, AS NEXT FRIEND OF
K.M.,

        Plaintiff,

        v.

OFFICER LUIGI MIRO,
UNKNOWN OFFICER, and
THE CITY OF CHICAGO,

        Defendants.

No. 11 CV 5660

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Chicago Police Officer Luigi Miro was on duty when his police truck collided with K.M., a minor who was riding his bike.[1] K.M.'s mother, Jennifer Posey, sued Miro, asserting that he violated K.M.'s constitutional rights to be free from excessive force, unreasonable seizure, and conscience-shocking governmental action. Posey also brought related state law claims against Miro, and sued the City of Chicago as an indemnifier. The defendants moved for summary judgment on all claims. For the reasons discussed below, I grant the defendants' motion in part, and deny it in part.

---

[1] K.M. is referred to by his initials, pursuant to Fed. R. Civ. P. 5.2(a).

## I. The Facts[2]

On August 10, 2011, Miro was assigned to patrol beat 22 in the 15th district, in a Chicago Police Department truck. DSOF ¶ 8. As he patrolled, he drove north on Central Avenue and then turned right, proceeding east either on Gladys Avenue or through an alley between Gladys and Jackson Boulevard. DSOF ¶¶ 18, 20. He turned right again and drove south along Lotus Avenue. DSOF ¶ 21. Because Lotus is a one-way street going north, DSOF ¶ 22, Miro drove "the wrong way" down Lotus. Still, Miro did not turn on his emergency lights or siren. DSOF ¶ 24.

As Miro approached Van Buren Street, it was light outside, he could see people sitting on the steps of a church at Lotus and Van Buren, and he could see clearly along Lotus all the way down to Congress Parkway, the next street south of Van Buren. DSOF ¶¶ 13, 26, 28. At Van Buren, rather than stop, Miro "revved" his engine and sped up. PSOAF ¶¶ 18–20, 26. Miro testified that he did not see K.M. (DSOF ¶ 29), but it was a clear day and Miro had an unobstructed view (DSOF ¶¶ 13, 26, 28), Miro was looking straight ahead (DSOF ¶ 34), and eyewitnesses offer first-hand testimony about Miro's and K.M.'s positions and directions of travel, prior to and at the time of the collision (*e.g.*, Dkt. 86-1 at 46–48, 52, 60–61, 65). That's enough to raise a genuine dispute about what Miro saw. While Miro's

[2] Summary judgment is appropriate only if there is no genuine dispute as to any material fact, and Miro is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I view the facts, and draw any reasonable inferences from those facts, in the light most favorable to Posey. Unless otherwise noted, the facts recited in this opinion are taken from the parties' Local Rule 56.1 statements. Miro's reply statement of undisputed material facts (Dkt. 89) is cited as "DSOF" and Miro's response to Posey's statement of additional facts (Dkt. 88) is cited as "PSOAF."

testimony is clear—he says he did not see K.M.—a reasonable jury could choose not to believe him. Miro did not use any evasive measure (such as applying the brakes). PSOAF ¶ 27. As Miro crossed the street, he collided with K.M. DSOF ¶¶ 30–31.

Just before the collision, K.M. was riding his bike on Van Buren toward Lotus. DSOF ¶ 31. He was in the street, waiting for a car to pass, when a friend called his name. *Id.* K.M.—who had not seen Officer Miro—was turning his bike around to respond to his friend when he was hit by Miro. DSOF ¶¶ 31–32. His injuries necessitated a cast, crutches, and a leg brace. DSOF ¶ 48.[3]

## II.   Analysis

### A.  Count I ("Excessive Force Under 42 U.S.C. § 1983") and Count II ("Unreasonable Seizure Under 42 U.S.C. § 1983")

A claim of "excessive force" is a claim that seeks to impose liability for physically abusive governmental conduct. *Kingsley v. Hendrickson*, 744 F.3d 443, 448 (7th Cir. 2014). The right to be free from such abuses derives from various provisions of the Bill of Rights. *Id.* In a particular case, the claim is evaluated by reference to the specific constitutional standard that governs the right, rather than under some generalized "excessive force" standard. *Id.* at 449. Because Posey's "excessive force" claim derives from the Fourth Amendment's prohibition against

---

[3] As an "additional fact," Posey submits that police officers "routinely accelerate towards pedestrians crossing the street, forcing them to jump out [of] the way." PSOAF ¶ 1. I have not considered this because it is inadmissible to show that Miro acted that way leading to the incident with K.M. (and irrelevant if used otherwise).

unreasonable seizures, Counts I and II both require proof of a seizure, and in the context of this case are essentially duplicative.[4]

Miro argues that he is entitled to summary judgment because he accidentally hit K.M., while a "seizure" under the Fourth Amendment requires intent. Dkt. 65 at 5–6. Miro is right on the law. *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998). But at this stage I must resolve genuine disputes of fact, and make all reasonable inferences from those facts, in Posey's favor. Through that lens, as Miro approached the Lotus-Van Buren intersection, he: did not stop, revved his engine, and sped up. PSOAF ¶¶ 18–20, 26. A jury could reasonably conclude that before impact, Miro saw K.M. but did nothing to avoid hitting him. PSOAF ¶ 21; DSOF ¶¶ 30–31. If those are the facts, a reasonable inference is that Miro terminated K.M.'s freedom of movement "through means intentionally applied," *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989), and therefore the collision was a seizure under the Fourth Amendment.

Miro also argues that he is entitled to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity is discussed more fully in Section II.B below. For now, Miro's argument fails because it assumes that he did not hit K.M. intentionally (Dkt. 65 at 9–10)—a finding I cannot make at this stage. Miro did not argue that he is protected by qualified immunity even if he intentionally hit K.M. Such an argument would be meritless anyhow. *See Brower*, 489 U.S. 593.

---

[4] Miro points this out (Dkt. 65 at 2) and Posey concedes it (Dkt. 82 at 3).

The motion for summary judgment on Counts I and II is therefore denied.

**B. Count III ("Due Process Under 42 U.S.C. § 1983")**

In Count III, Posey asserts that Miro violated K.M.'s "substantive due process" rights. Substantive due process rights are violated when the government abuses its power so egregiously that it "shocks the conscience." *Lewis*, 523 U.S. at 845–47. If Miro hit K.M. intentionally, he is entitled to summary judgment on Count III because Posey has a Fourth Amendment claim, not a substantive due process one. *Id*. at 843. Miro argues that there can be no substantive due process violation for unintentional conduct either (Dkt. 65 at 6–8), but as discussed below, that is not quite the current state of law. In any event, even if a person's substantive due process rights can be violated through less than intentional conduct, Miro is entitled to qualified immunity.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) (internal quotation marks omitted) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). If the answer to either question is "no," Miro is entitled to summary judgment.

### 1. Whether Miro's conduct violated K.M.'s substantive due process rights

In arguing that no substantive due process right was violated, Miro relies heavily on *Lewis*, which he asserts stands for the proposition that there is "no Fourteenth Amendment liability without an intent to harm." Dkt. 65 at 7. But *Lewis* was not that broad. Because conduct that "shocks in one environment may not be so patently egregious in another," *Lewis* demands "an exact analysis of circumstances" in each substantive due process claim. *Lewis*, 523 U.S. at 850.

In some contexts, government officials have time to make unhurried judgments and reflect on the wisdom of those judgments. In such situations, substantive due process rights can be violated even if the official does not intend to harm the plaintiff. For example, substantive due process rights are violated when prison officials are "deliberately indifferent" to the medical needs of their prisoners, even if the officials don't intend harm. *Id*. at 849–50, 853. In different contexts, "unforeseen circumstances demand an officer's instant judgment" and decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." *Id*. at 852–54. Under those circumstances, greater culpability is required before substantive due process rights are violated. Thus, prison guards attempting to quell a riot do not violate substantive due process rights unless they apply force with the intent to cause harm. *Id*. at 852–53. The holding of *Lewis* is that this greater culpability—intent to harm—applies in the context of sudden, high-speed police chases. *Id*. at 854.

Aside from its specific holding, and the specific examples discussed, the *Lewis* Court noted that "[w]hether the point of the conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Id.* at 849 (internal citation and quotation marks omitted).[5]

This case may be one of those "closer calls" where a government actor could violate substantive due process and shock the conscience even though his culpability follows from something less than intentional conduct. Miro was not involved in a high-speed chase, and may have had time to make an unhurried judgment (indeed, he claims he was driving conservatively). Miro testified that when traveling the wrong way on a one-way street, he would normally turn on his lights or siren, and that there is no reason not to do so. Dkt. 85-2 at 69. But he didn't do so here. DSOF ¶ 24. A dispute exists as to how fast he was traveling at the time of impact. *E.g.*, PSOAF ¶ 20; Dkt. 85-3 at 19; Dkt. 86-1 at 66, 75; Dkt. 86-2 at 35, 81–82. And a dispute exists as to whether he saw K.M. before impact and had time to stop. PSOAF ¶¶ 21, 28. These facts, like those in *Carter v. Simpson*, 328

---

[5] Miro discusses *Jones v. City of Chicago*, No. 04 C 3742, 2008 WL 4153679 (N.D. Ill. 2008), which reads *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996) as holding that a state actor's conduct can *never* "shock the conscience" and therefore violate substantive due process unless the actor intended to cause harm. *Jones*, at *16–17. *Hill* does hold that in order to state a substantive due process claim, a plaintiff must demonstrate that the defendant knew of impending harm and consciously refused to prevent it. *Hill*, 93 F.3d at 421. *Hill* remains the law of the circuit, but in light of *Lewis*, decided after *Hill*, the contours of the substantive due process right are less clear. Intentional seizures are to be analyzed as Fourth Amendment claims, not substantive due process ones, and as discussed above, *Lewis* acknowledges a "middle range" of conduct proscribed by substantive due process. For these reasons, Count III is best resolved on the basis of qualified immunity.

F.3d 948 (7th Cir. 2003), would allow a reasonable jury to find the officer's conduct to have been "willful and wanton," meaning that it "show[ed] an utter indifference to or conscious disregard for the safety of others." *Carter*, 328 F.3d at 951–52.[6]

I need not decide whether Miro's conduct, if it were unintentional, violated K.M.'s due process rights because (as explained next) no such right was clearly established at the time, and Miro is entitled to qualified immunity. *See Pearson*, 555 U.S. at 236 (courts may resolve qualified immunity on the second step, without resolving the first step).

### 2. Whether the substantive due process right potentially violated was clearly established in August 2011

By permitting damages only for violations of "clearly established" rights, qualified immunity protects all but the plainly incompetent and those who knowingly violate the law. *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Posey bears the burden of demonstrating that, as of August 2011, it was clearly established that Miro's conduct "shocked the conscience." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). To do so, Posey can show either that (1) Miro's conduct so patently "shocked the conscience" that reasonable officials would know that without guidance from a court; or (2) in a closely analogous case, conduct like Miro's

---

[6] *Carter* held that there was no due process violation for the potentially willful and wanton conduct because the case involved a situation like a high-speed chase, and after *Lewis*, due process liability in such a case requires intentional conduct. Unlike *Carter* (or *Lewis*), this case did not involve a high-speed chase or similar situation, and by speaking of a "middle range," *Lewis* does not restrict substantive due process claims to intent-to-harm claims.

"shocked the conscience." *Id*. Posey did not attempt to make the first showing and has failed to make the second.

Posey offers two cases: *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996); and *Lewis*. According to Posey, "*Hill* established that, in the context of non-emergency police motor vehicle accidents, a criminal recklessness-deliberate indifference standard would apply." Dkt. 82 at 17. But the *Hill* court said that a substantive due process violation would not be found unless "the official knew an accident was imminent but consciously and culpably refused to prevent it," and rejected plaintiff's claim. *Hill*, 93 F.3d at 421. *Hill* does not clearly establish that culpability less than intent to harm can support a substantive due process violation. Nor did *Lewis*. After *Lewis*, it was clear that:

- Mere negligence does not violate substantive due process rights. *Lewis*, 523 U.S. at 849.

- Conduct intended to injure is the sort of official action most likely to violate substantive due process rights. *Id*.

- Deliberate indifference can violate substantive due process rights in the context of ordinary prison custody. *Id*. at 850–51.

- In a high-speed police chase or an attempt to quell a prison riot, intent to harm is required in order to find a substantive due process violation. *Id*. at 852–54.

In any other scenario, it is a stretch to argue that *Lewis* "clearly establishes" anything. Indeed, *Lewis* specifically stated that "the constitutional concept of conscience-shocking . . . points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of liability." *Id*. at 848. The Court specifically stated that "[w]hether the point of conscience-shocking is reached when injuries are

produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Id.* at 849. Thus, in any case, the Court demanded "an exact analysis of circumstances." *Id.* at 850.

According to Posey, (*dicta* in) *Lewis* clearly establishes that "deliberate indifference" shocks the conscience in all situations in which deliberation is practical. Dkt. 82 at 16–17. Given the "close calls" and "exact analyses" that *Lewis* prescribed, I disagree. Summary judgment is therefore granted on Count III, on the basis of qualified immunity.

### C. Count IV ("Battery Under Illinois Law") and Count VI ("Negligence")

Miro argues that he is entitled to summary judgment on Counts IV and VI, state law claims for battery and negligence, based on immunity under the Illinois Tort Immunity Act. Dkt. 65 at 10–11, 14. But as he acknowledges (*id.*), there is no immunity if his conduct was "willful and wanton." 745 ILL. COMP. STAT. 10/2-202. The relevant Illinois statute defines "willful and wanton" conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILL. COMP. STAT. 10/1-210. As discussed above, a reasonable jury could find that Miro intentionally hit K.M., in which case his conduct would have been "willful and wanton." And even if Miro didn't hit K.M. intentionally, as in *Carter*, a reasonable jury could find that Miro's conduct was

nonetheless "willful and wanton." *Carter*, 328 F.3d at 951–52. Summary judgment is therefore denied on Counts IV and VI.

### D. Count V ("Intentional Infliction of Emotional Distress Under Illinois Law")

To succeed on her state claim for intentional infliction of emotional distress, Posey must show: (1) Miro's conduct was extreme and outrageous; (2) Miro either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) Miro's conduct did in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69 (2003).

It is undisputed that K.M. "did not talk to anyone" about the incident after it happened. DSOF ¶ 50. He didn't talk to his teacher, friends, mom, step-father, grandmother, or aunts. Dkt. 66-1 at Exh. C, pp. 80–81. He has not seen a counselor. Dkt. 86-8 at 61. In her attempt to defeat summary judgment, the only "emotional distress" that Posey relied on is the fact that K.M. "thinks about" the incident "a lot" and "gets out of the way" when he sees police officers. Dkt. 82 at 19; PSOAF ¶ 39. That is insufficient as a matter of law:

> Infliction of emotional distress alone is not sufficient to give rise to a cause of action. . . . The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

*Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999) (emphasis in original) (some internal quotation marks omitted) (quoting *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976)). Summary judgment is therefore granted on Count V.

### E. Count VII ("Claim Under 745 ILCS 10/9-102 and *Respondeat Superior* Against the City of Chicago")

In Count VII, Posey seeks to make the City of Chicago pay any judgment awarded against Miro. The City argues that if Miro is granted summary judgment on all of the substantive counts, there is no judgment against Miro that the City can be made to pay. Dkt. 65 at 15. Because I deny summary judgment on Counts I, II, IV, and VI, I also deny the motion as to Count VII.

### F. Claims Against the "Unknown Officer"

Posey brought her claims against Officer Miro, the City of Chicago, and an "Unknown Officer." Dkt. 52. The time to name the unknown officer has long passed, and the statute of limitations has run, so this defendant is dismissed. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007).

## III.  Conclusion

Defendants' motion for summary judgment is granted in part, denied in part. Because a dispute exists as to whether Miro hit K.M. intentionally, summary judgment is denied on Counts I and II. Summary judgment is granted on Count III on the basis of qualified immunity. Because there is a dispute as to whether Miro acted willfully and wantonly, summary judgment is denied on Counts IV and VI. Because there is no evidence that K.M. suffered severe emotional distress, summary judgment is granted on Count V. Because substantive counts against Miro remain,

summary judgment on the indemnification count, Count VII, is denied. Finally, the unknown officer is dismissed from the case.

ENTERED:

Manish S. Shah
United States District Judge

Date: 8/5/14